**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2020[*]
Decided August 27, 2020

*Before*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-3168

| | |
|---|---|
| DAVID H. PENNY, <br>   *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 17-cv-2232 |
| LINCOLN'S CHALLENGE ACADEMY, <br>   *Defendant-Appellee*. | Colin S. Bruce, <br> *Judge*. |

**O R D E R**

 Claiming that his employer fired him because he opposed an act of disability discrimination against a coworker, David Penny sued for retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. The district court entered summary judgment for the employer, explaining that Penny lacked evidence of a causal connection between his opposition and his termination. We see no error in that ruling, so we affirm the judgment.

---

 [*] We have agreed to decide this case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

        For reasons we explain below, we draw the facts from the defendant's evidentiary submissions, viewed in the light most favorable to Penny. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019). Penny held various positions at Lincoln's Challenge Academy, a reform school run by the Illinois Department of Military Affairs, from 2003 to 2017. In June 2015, when he was a "Commandant," the Academy did not renew contracts for several workers, including Jim Hart. Penny asked the academy's director, Peter Thomas, and the deputy director at the time why Hart's contract was not being renewed; he was told: "Because he's out a lot, he's sick a lot, he's got a lot of medical problems." Penny responded, "you really can't do that," and "I don't think that's right and I don't think we should be doing that." In August, Penny sent the human resources department a memo describing a phone call in which Hart "attempt[ed] to elicit information regarding the reason for his non-renewal." Penny "reminded" Hart that he "was not the one who recommended his nonrenewal" and said that whatever the director told him "[was] the reason." In his deposition, Penny testified that two employees from the human resources department later told him that it was "in [his] best interest" to "make that memo disappear." Penny had "no idea" why human resources "wanted the whole thing gone."

        Penny further testified that, after Hart's non-renewal, he experienced a "lot of tension" at work and had "some friction" with Director Thomas. As he stated at his deposition, he "[couldn't] go ten days without getting accused of some racism or something-ism," and his work environment became "pretty hostile." And after Penny had knee surgery, Thomas told him that he was not allowed to return to work until he was fully healed, even though, according to Penny, the Academy had accommodated others in the department with medical restrictions.

        At the end of 2015, Penny became the Recruitment, Placement, and Mentorship Coordinator, even though he "didn't apply for [the position] and didn't want it." But he was told that taking it would be "in [his] best interest," which, as Penny later testified, he understood as a veiled threat about his future at the Academy.

        About six months later, in June 2017, the Academy terminated Penny's contract. His supervisor, Deputy Director Michael Haerr (who started working at the Academy in late 2016), had recommended the termination. As Thomas explained in a memo, Penny was being let go for "substandard performance," specifically his "inability to … meet Academy recruiting goals." According to Penny's deposition testimony, his superiors had imposed goals that they knew "could not be met."

Penny sued the Academy for retaliation in violation of the ADA (and other claims that he does not pursue on appeal). Specifically, he alleged that the Academy terminated his contract because he had opposed Hart's non-renewal, which he saw as an act of disability discrimination. He asserted that he was "coerc[ed] into accepting" a lower status position and that his superiors purposefully set "unachievable" performance goals "to give them an excuse to terminate [him]."

After discovery, the Academy moved for summary judgment. It listed ten "undisputed material facts" and argued that, based on these facts, Penny could not establish a prima facie case of retaliation under the ADA. In his response, Penny argued that he had met his burden and that, in any event, Federal Rule of Civil Procedure 56 is unconstitutional because it violates the right to a jury trial. In a section labeled "disputed material facts," he responded to six of the Academy's proffered facts. For the most part, his responses add only minor clarifications or challenge the facts' legal significance, rather than the fact itself. Despite attaching 114 pages of exhibits, Penny included only one citation to record evidence in his "disputed material facts" section.

The district court granted the Academy's motion for summary judgment. The court first stated that it drew most of the facts from the Academy's statement of undisputed material facts because Penny's response failed to comply with Central District of Illinois Local Rule 7.1(D)(2). That rule provides, in relevant part, that each claim of disputed material fact and each additional material fact must be "supported by evidentiary documentation referenced by specific page." C.D. Ill. R. 7.1(D)(2)(b)(2), (5). Penny's response included only a section of "disputed material facts," with no citations. And although he incorporated new facts into his argument, he did not list them in a separate fact section or cite any evidentiary support, as required. Considering the "adequately supported" material facts only, the court concluded that Penny did not have evidence of a causal connection between a protected activity and his termination. It explained, in part, that Penny had "no evidence" that Haerr knew anything about his opposition to Hart's non-renewal, adding that Haerr did not even work at the Academy at the time of Penny's protected activity. The court also rejected his challenge to Rule 56.

On appeal, Penny first challenges the district court's ruling that he failed to comply with the local rules, a decision that we review for abuse of discretion only. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020). Citing an earlier version of Local Rule 7.1(D) that exempted pro se litigants from its requirements, *see* C.D. Ill. R. 7.1(D)(6) (2010) (amended 2013), Penny argues that his failure to adhere to the rule was "unintended and accidental" and that he is "at worst guilty of excusable

neglect." The current rule, however, does not contain a pro se exemption; it states only that "Local Rule 7.1(D) does not apply to social security appeals or any other case upon the showing of good cause." C.D. ILL. R. 7.1(D)(2)(b)(6) (2017). Here, Penny did not show (or try to show) good cause to excuse his noncompliance. In his reply brief, he implies that pro se status itself constitutes "good cause," but it does not. We have repeatedly recognized that "district courts may require strict compliance with their local rules," *Hinterberger*, 966 F.3d at 528, and have specifically approved of a court's strict enforcement of Rule 7.1(D) against a pro se litigant, *see McCurry*, 942 F.3d at 787 n.2. The district court did not abuse its discretion in doing so here.

Penny next challenges the entry of summary judgment for the Academy on his retaliation claim. Although we rely on the Academy's statement of undisputed material facts, we still view those facts in the light most favorable to Penny and review the district court's ruling de novo. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). To survive summary judgment, Penny needed evidence that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) there is a "but for" causal connection between the two. *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). Only the third element is at issue here. One way to demonstrate it is "by showing that the stated reasons for the firing were pretextual." *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019).

Penny raises two principal arguments on this point. First, he contends that Haerr's lack of knowledge about his protected activity is irrelevant because Director Thomas made the ultimate termination decision, and Thomas had a "longstanding vendetta" against him. Even if we accepted this assertion (which Penny did not substantiate), Penny has not identified evidence that Thomas terminated his contract because of his opposition to Hart's non-renewal two years earlier, rather than his admitted failure to meet performance goals. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Penny asserts that these goals were set unrealistically high, but he does not point to any evidence that would support an inference that the reason given for his termination—his supervisor's recommendation based on his performance—was "phony." *Graham*, 930 F.3d at 929. And even if Thomas disliked Penny, as he says, there is no evidence connecting that personal animus with Penny's protected activity.

Second, Penny argues that the Academy "never prove[d] the absence of a genuine issue of fact" and thus was not entitled to summary judgment. But Penny misconceives the burdens of production. At summary judgment, "a party must show what evidence it has that would convince a trier of fact to accept its version of events."

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). That applies to both parties, not just the movant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (explaining burden on nonmoving party); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (noting "nonmovant must present definite, competent evidence in rebuttal" to defeat summary judgment). Penny contends that he *would* have made this showing through witness testimony at trial and that he did not take any depositions to present this testimony earlier "due to time and cost." But a party cannot defeat summary judgment with promises to furnish evidence down the line.

Penny alternatively argues that he is entitled to remand on the ground that summary judgment procedures violate the Seventh Amendment's guarantee of a jury trial. He acknowledges that we previously rejected that argument, *see, e.g.*, *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006), but urges us to reconsider. We see no compelling reason to do so. *See Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002) ("[A]rguing that Rule 56 … violates the Seventh Amendment … flies in the face of firmly established law."). Because Rule 56 is consistent with the Constitution, we must reject his additional argument that, in promulgating it, the judicial branch exceeded the authority delegated to it by Congress under the Rules Enabling Act, 28 U.S.C. § 2072.

We have considered Penny's other arguments, and none has merit.

AFFIRMED